**William M. GEIERSBACH, Jr., Appellant–Plaintiff**

**v.**

**Robert FRIEJE, Dave Wagner, and Tri–State University, and Josh Wagner, Appellees–Defendants.**

No. 76A03–0309–CV–371.

Court of Appeals of Indiana.

April 28, 2004.

Rehearing Denied June 29, 2004.

John D. Boren, Boren, Oliver & Coffey, Martinsville, IN, Attorney for Appellant.

Donna H. Fisher, Smith, Fisher, Maas & Howard, Indianapolis, IN, Attorney for Appellee.

## OPINION

ROBB, Judge.

William Geiersbach was injured during a Tri–State University ("Tri–State") baseball team drill organized by head coach Dave Wagner and led by assistant coach Josh Wagner.[1] Geiersbach brought suit against Tri–State, Dave, Josh, and teammate Robert Frieje. Frieje filed a Motion for Summary Judgment and Tri–State, Dave and Josh filed a joint Motion for Summary Judgment. Following a hearing, the trial court granted the motions and Geiersbach now appeals. We affirm.

### Issue

Geiersbach raises three issues for our review which we consolidate and restate as whether the trial court properly granted the motions for summary judgment.

### Facts and Procedural History

Geiersbach was a student at Tri–State and a member of the university's baseball team. Dave was the head coach of the team. Although not employed by the university, Dave's son, Josh, was a volunteer assistant for Dave.

On February 5, 2000, the baseball team was practicing inside the university's gymnasium. During one of the infield drills, Dave positioned the players to resemble their positions. The pitcher and Josh each had a ball. The pitcher would deliver his

---

1. We heard oral argument on this case on March 3, 2004, at Ivy Tech State College in Lafayette. We thank the attorneys for their capable advocacy and Ivy Tech for their gracious reception.

ball to the catcher. When the catcher received the ball, he was supposed to discard it. At the same time, Josh, standing in the batter's box, would introduce his ball into play by hitting it in whatever direction he chose.

In this instance, Dave positioned runners at first and third base, but Josh was actually conducting the drill. The pitcher delivered his ball to Frieje, the catcher. Frieje believed that it was a "throw through" situation where he was to throw to second base to cut off a potential steal. At the same time, Josh rolled his hit down the third base line. Second baseman Geiersbach moved to cover second base, keeping his attention on the third baseman fielding the ball Josh had put into play. Geiersbach was prepared to receive the throw from the third baseman to render a "force out" at second base. He was struck in the left eye by the baseball thrown by Frieje. He suffered severe and permanent damage to his eye.

Geiersbach brought suit against Tri–State, Dave, Josh, and Frieje, alleging negligence and breach of duty. Frieje filed an answer and a Motion for Summary Judgment. Tri–State, Dave, and Josh also filed a Motion for Summary Judgment. Following a hearing, the trial court granted Frieje's and Tri–State, Dave, and Josh's Motions for Summary Judgment. This appeal ensued.

*Discussion and Decision*

## I. Standard of Review

Summary judgment is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C). When determining the propriety of summary judgment, we use the same standard as the trial court. *Caito Foods v. Keyes,* 799 N.E.2d 1200, 1201 (Ind.Ct.App.2003). We construe all facts and reasonable inferences to be drawn therefrom in favor of the non-movant. *Id.* When there is no genuine issue of material fact and the non-moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Id.* Where, as here, the material facts are essentially undisputed, our task is to determine whether the trial court properly applied the law to the facts. *Id.*

## II. Standard of Care

Geiersbach contends that the trial court erred in granting the motions for summary judgment. He argues that a genuine issue of material fact exists as to whether any of the parties breached a duty owed to him.

Geiersbach directs our attention to *Beckett v. Clinton Prairie Sch. Corp.* 504 N.E.2d 552 (Ind.1987), in which our supreme court stated that high school personnel had a duty to exercise ordinary and reasonable care for the safety of the children under their authority. *Id.* at 553. In *Beckett,* a high school baseball team outfielder brought a negligence claim against the school district for injuries sustained when he collided with an infielder during practice. The trial court granted the school district's summary judgment motion and this court reversed and remanded. The supreme court granted transfer and affirmed the decision of this court, examining prior decisions which stated that schools had a duty to exercise ordinary and reasonable care for elementary school students. *See Norman v. Turkey Run Comm. Sch. Corp.,* 274 Ind. 310, 411 N.E.2d 614, 616 (1980) (stating that persons entrusted with children have a special responsibility recognized by the common law to supervise their charges); *Miller v. Griesel,* 261 Ind. 604, 308 N.E.2d 701, 707 (1974) (stating that there is a duty recognized at law for school authorities to exercise reasonable care for the safety of their children). The *Beckett* court extended the

holdings in *Miller* and *Norman* to include ordinary and reasonable care and supervision of secondary school students as well because they are under the care and supervision of school personnel. 504 N.E.2d at 553–54.

Geiersbach concedes that this rationale does not readily transfer to the university setting. He admits that courts have been reluctant to characterize the basic student-college relationship as "special" so as to invoke a duty on behalf of the college. *See, e.g., Bradshaw v. Rawlings,* 612 F.2d 135, 138 (3d Cir.1979) ("Our beginning point is the recognition that the modern American college is not an insurer of the safety of its students."). However, Geiersbach argues that a trend is developing among courts to find a "special" relationship between colleges or universities and their student-athletes.

One such decision is *Kleinknecht v. Gettysburg College,* 989 F.2d 1360 (3d Cir. 1993), in which the parents of a deceased college lacrosse player brought suit against the college for negligence and breach of duty. The college recruited the player to play on its lacrosse team. During a fall semester practice supervised by coaches, the player suffered a fatal heart attack. The player's parents attributed his death to the college's negligent act of failing to provide medical staff at its practice. The court held that the college owed the player a duty of care based on the special relationship between the college and the player engaged in a school-sponsored activity for which he has been recruited. *Id.* at 1372.

More recently, in *Davidson v. Univ. of N. Carolina at Chapel Hill,* 142 N.C.App. 544, 543 S.E.2d 920 (2001), a North Carolina court held that the university owed a duty of care to a cheerleader who had been injured during practice. *Id.* at 928. The court emphasized the mutual dependence of the relationship—focusing on the benefits the university derived from the cheerleading squad as well as the benefits the cheerleaders received from the university. Additionally, the court found significant the high degree of control the university exerted over its cheerleaders; requiring them to maintain a minimum grade point average and refrain from drinking alcohol in public. The court noted that the university's significant control over the cheerleaders' behavior may have led the cheerleaders to believe that they would receive a higher level of protection from injury.

Geiersbach concedes that no Indiana court has had occasion to rule in cases involving the duty of colleges and universities to their student-athletes. However, he cites *Knapp v. Northwestern Univ.,* 101 F.3d 473 (7th Cir.1996), *cert. denied,* 520 U.S. 1274, 117 S.Ct. 2454, 138 L.Ed.2d 212 (1997), as a case in which the Seventh Circuit appears to recognize the imposition of a duty on colleges and universities with regard to their student-athletes. In *Knapp,* a student who had been barred from participating in intercollegiate basketball because of his heart defect filed an action against the university he attended. The student had been recruited on a basketball scholarship but, upon learning of his heart defect, the university forbade him from playing or practicing with the team, but allowed him to retain the scholarship. The district court denied the university's motion for summary judgment and granted the student's motion for permanent injunction. Upon appeal, the Seventh Circuit reversed the district court's decision, permitting the university to deem the student ineligible to play. The court stated that the medical determinations should be left to team doctors and universities as long as they are made with reason and rationality and with full regard to possible and reasonable accommodations.

Specifically, the court stated that, in cases where medical experts disagree regarding the extent of risk of serious harm or death, Congress did not intend the courts to make the final medical decision. Rather, the court held that the university must be allowed to make its own determinations of substantial risk and severity of injury provided those determinations are based on reliable evidence. *Id.* at 485.

Additionally, Geiersbach directs our attention to *Clark v. Wiegand*, 617 N.E.2d 916 (Ind.1993), in which a judo student was injured by a co-participant during a class at Indiana State University. Significantly, the student had spoken to her instructor regarding a particular student who threw her to the mat too hard during class. After she was subsequently injured by the same student, she brought suit against the instructor. Our supreme court held that whether the student had incurred risk so as to bar recovery was a question for the jury. *Id.* at 919.

We disagree with Geiersbach that the reasonable care standard should apply to the university and its student-athletes as it relates to inherent dangers. The reasonable care standard was developed to guide people in their day to day lives. *See, e.g., Ross v. Lowe*, 619 N.E.2d 911, 914 (Ind.1993) ("Reasonable care requires that the care employed and the precautions used be commensurate with the danger involved under the circumstances of a particular case."). Athletes, on the other hand, choose to participate in sports. Sports, by their nature, involve a certain amount of inherent danger. We believe that the proper standard of care for sporting events and practices should be to avoid reckless or malicious behavior or intentional injury.

In respect to what dangers are inherent in a sport, we believe that the existing caselaw is instructive. For example, in *Kleinknecht*, the parents brought suit against the college for failure to provide medical staff at practice. The lack of medical staff is not an inherent danger of playing lacrosse, so the court properly allowed the suit to continue on a breach of duty claim. Similarly, in *King v. Univ. of Indianapolis*, 2002 WL 31242233 (S.D.Ind.), a 19–year–old football player died of heat stroke while participating in the first practice of the season. The player's family introduced evidence that the player showed signs of distress that were negligently treated by the football staff. The court determined that the player's injuries were not inherent to the game of football. While that court continued on into a discussion of incurred risk, we prefer to halt the discussion at the question of whether the danger was inherent in the sport. As it was not, the court properly held that the suit could continue.

Likewise, in *Clark*, had the judo student merely been injured in the class, there may have been no liability on the part of the classmate or the instructor. However, because the instructor failed to act when informed of the risk, the conduct of the instructor could reasonably be found sufficiently reckless as to deny the defendants' motion for judgment on the evidence and therefore, the student could present her case to a jury even though being injured during a judo class may have been an inherent risk. *Clark*, 617 N.E.2d at 918–20.

In *Mark v. Moser*, 746 N.E.2d 410 (Ind. Ct.App.2001), a cyclist in a triathlon cut off another participant, causing severe injury to the participant. The *Mark* court held that a participant does not owe a duty to fellow participants to refrain from conduct which is inherent and foreseeable in the play of the game even though such conduct may be negligent and may result in injury absent evidence that the other participant

either intentionally caused injury or engaged in conduct so reckless as to be totally outside the range of ordinary activity involved in the sport. *Id.* at 420. This is the same standard of care we are following in this decision.

More recently, in *Gyuriak v. Millice,* 775 N.E.2d 391 (Ind.Ct.App.2002), *trans. denied,* Millice hit an errant golf ball, striking Gyuriak who was playing on a different hole. Gyuriak filed a complaint against Millice, alleging negligence and recklessness. The trial court granted Millice's motion for summary judgment and Gyuriak appealed. Gyuriak argued that *Mark* should be overturned because it was inconsistent with the 1985 Indiana Comparative Fault Act. This court rejected his argument, noting that only secondary assumption of risk had been incorporated into the Act's definition of "fault":

> This is because the primary assumption of risk occurs when an individual, by voluntarily engaging in an activity, consents to those risks that are inherent in and arise by virtue of the nature of the activity itself. In such cases, the participant is owed no duty with regard to such inherent and ordinary risks.

*Id.* at 394 (citations omitted). This court stated that, when a person sustains an injury as a result of risks inherent in sporting activities in which the person voluntarily engages, there is no occasion to invoke comparative fault principles because there has been no breach of duty of care and accordingly no conduct that would warrant the imposition of this liability. *Id.* at 394–95. Because Millice did not owe Gyuriak a duty with respect to the risks inherent in the activity of golf, this court affirmed the trial court's grant of Millice's summary judgment motion and our supreme court denied transfer.

The caselaw creates a clear distinction between dangers which are inherent in the activity and those which are not. However, it is important to note that, while we are adopting the standard of care used in the above cases, we believe that *Mark* and, to the extent that it followed *Mark, Gyuriak* used misleading language. Rather than employing the misleading language of "incurred risk" and "assumption of risk," we prefer to resolve the issues in this case by merely determining whether the risks were inherent in the sport. While this is a minor tweaking of the language—as seen above, secondary assumption of risk concerns situations where a person voluntarily engages in an activity—it avoids the confusion which followed *Heck v. Robey,* 659 N.E.2d 498 (Ind.1995). In *Heck,* our supreme court stated:

> Consequently, the complete defense of "incurred risk" no longer exists; it is subsumed by the concept of fault in our comparative fault scheme. As a component of fault, it is subject to the [Comparative Fault] Act's apportionment scheme that reduces or eliminates the plaintiff's recovery depending on the degree of the plaintiff's fault.

*Id.* at 504–05. This language has caused confusion as to what extent incurred risk was actually subsumed by comparative fault. In *Mark,* this court stated that only secondary assumption of risk had been subsumed. However, the dissent in *Gyuriak* argued that all assumption of risk had been subsumed:

> In sum, this court has attempted to carve out an incurred risk exception from the Indiana Comparative Fault Act before by making an exception for the incurred risk relating to the profession one chooses. *See Heck,* 630 N.E.2d at 1366. The Indiana Supreme Court reversed our decision and stated that incurred risk as a complete defense no longer exists after the enactment of the Act.

*Gyuriak*, 775 N.E.2d at 399 (Robb, J., dissenting). We believe that the confusion caused by the "incurred risk" and "assumption of risk" language can be assuaged by merely stating that athletes who choose to participate in sports must accept that those sports involve a certain amount of inherent danger. Therefore, the proper standard of care for sporting events and practices should be to avoid reckless or malicious behavior or intentional injury.

■ Much has been made by the parties in this case as to whether the coaches should be considered co-participants in the sporting event. Josh, in particular, relies on language from *Mark*. The *Mark* court held that a participant does not have a duty to fellow participants to refrain from conduct which is inherent and foreseeable in the play of the game even though such conduct may be negligent and may result in injury absent evidence that the other participant either intentionally caused injury or engaged in conduct so reckless as to be totally outside the range of ordinary activity involved in the sport. 746 N.E.2d at 420.

The decision in *Mark* was written specifically to address the question of whether a co-participant is liable for an accidental injury during a sporting event. We expand the language in *Mark* today to include all participants in the sporting event. By participant, we mean any person who is part of the sporting event or practice involved. This would include players, coaches, and players who are sitting on the bench during play. Thus, in the present case, Geiersbach, Frieje, Dave, and Josh are all considered participants.

Those participating in the event or practice should be precluded from recovering for injuries received resulting from dangers or conduct inherent in the game unless they prove that the conduct was reckless or the injury was intentional. This

falls in line with the reasoning behind *Mark* and *Gyuriak* where co-participants were injured. Such a danger is inherent in the game and the participant should not be able to recover from the player, team, or stadium without proving recklessness or that the injury was somehow intentional.

### III. Frieje's Motion for Summary Judgment

■ Frieje relies on *Mark* for his defense. In *Mark*, this court stated that when the Indiana legislature eliminated the common law contributory negligence principles in favor of the Act, it failed to account for situations where parties are unable to protect themselves. The court held that, because it is the job of the judiciary to fill the voids in the law, participants are barred as a matter of law from recovering against co-participants for injuries sustained as a result of inherent or foreseeable dangers of the sport. *Mark*, 746 N.E.2d at 421. Notably, the court stated that:

[V]oluntary participants in sports activities assume the inherent and foreseeable dangers of the activity and cannot recover for injury unless it can be established that the other participant either intentionally caused injury or engaged in conduct so reckless as to be totally outside the range of ordinary activity involved in the sport. The plaintiff's assumption of risk is primary in nature inasmuch as it flows from the legal relationship of the parties, is evaluated according to an objective standard rather than a subjective standard, and acts to bar recovery. Thus, it is a question of law for the determination of the court, whether the injury-causing event was an inherent or reasonably foreseeable part of the game, such that the plaintiff is considered to have assumed the risk. If the court determines that the plaintiff did assume the risk, then the plaintiff's cause fails.

If, on the other hand, the court determines that plaintiff did not assume the risk, then the cause proceeds to a jury to determine, as a question of fact, whether the co-participant intentionally or recklessly caused the injury.

*Id.* at 420 (internal footnote omitted).

More recently, in *Gyuriak,* this court had an opportunity to revisit the question of negligence in sports injuries. We stated that, when a person sustains an injury as a result of risks inherent in sporting activities in which the person voluntarily engages, there is no occasion to invoke comparative fault principles because there has been no breach of duty of care and accordingly no conduct that would warrant the imposition of liability. *Gyuriak,* 775 N.E.2d at 394–95.[2]

We agree with the decision of *Mark* and *Gyuriak* and merely change the wording to reflect the discussion above in Section II. We believe that any participant in a sporting event or practice may not recover from any other participant without proving that the injury was caused by malicious or reckless behavior or that the injury was intentional. Geiersbach presented no evidence that Frieje acted recklessly or maliciously or caused Geiersbach's injury intentionally. In Geiersbach's deposition, he stated that he did not believe that Frieje acted intentionally:

Q: Okay. You testified that you don't believe that Bobby Frieje intentionally threw the ball to hit you in the face; is that the case?

A: Yes.

Q: Okay. You believe that he just made a mistake in the drill; is that correct?

A: Yes.

Appellant's Appendix at 123. Without evidence that Frieje acted intentionally, maliciously, or recklessly, we hold that the trial court correctly granted Frieje's Motion for Summary Judgment.

## IV. Dave, Josh, and Tri–State's Motion for Summary Judgment

### A. The Coaches

Josh directs our attention to *West v. Sundown Little League of Stockton, Inc.,* 96 Cal.App.4th 351, 116 Cal.Rptr.2d 849 (2002), in which a little league coach was conducting a pre-game drill for outfielders by throwing balls to the players. The coach was throwing the balls so that the players would have to look into the sun to catch them. A player lost the ball in the sun and was struck in the eye with the ball. When the player sued the coach and the little league, the court stated: "In their practices, coaches and instructors may make mistakes. Where those mistakes are not outside the range of ordinary activity for the sport, the coaches are not liable if injuries result from their missteps." *Id.* at 360, 116 Cal.Rptr.2d 849. Notably, the *West* court rejected any distinction between an injury which occurred during practice and an injury which occurred during competition. *Id.* The court held that the drill did not create extraordinarily dangerous conditions for which the coaches, league, or Little League were liable. *Id.* at 363, 116 Cal.Rptr.2d 849.

This seems to be merely another way of stating the standard of care we have adopted above in Section II. Because sports involve certain inherent dangers, a participant cannot recover without offering proof of reckless or malicious behavior or intentional injury. Certainly here, Geiersbach has not proven, or even attempted to

2. Provided, of course, that the injury is not intentional or the result of reckless or malicious behavior.

prove, that Dave or Josh, both participants in the case at bar, intended to injure him or that the behavior was malicious. So, the question becomes whether the practice involved reckless behavior.

■ Geiersbach contends that the coaches were reckless because the chosen practice drill could potentially put two balls into play. However, this seems to contradict Geiersbach's admission that the injury was accidental. Although two balls were being used, this was a drill which the team had used before and which was not uncommon in baseball practices. Being hit by a ball during a practice (or during a game) is an inherent danger in baseball and we do not believe that Geiersbach has proven that the coaches acted recklessly.

■ Alternatively, Geiersbach contends that the question of the duty of care should be one for the jury and not a proper question for a summary judgment motion. Although the question of whether a defendant has breached a duty of care is generally a question of fact for the jury, the existence of a duty is generally a question of law for the court to determine. *Webb v. Jarvis*, 575 N.E.2d 992, 995 (Ind.1991). Here, the question before us is whether the defendants in this case owed a duty to Geiersbach. This is a question of law, not a question of fact, and is properly considered under a motion for summary judgment. Therefore, the trial court properly granted the motion for summary judgment for the coaches.

### B.  The University

■ In *Mark*, this court stated:

Specifically, application of a negligence standard is justified where a student athlete sues a school or its representatives because there is a well-established duty on the part of such institutions and their personnel to exercise ordinary and reasonable care for the safety of those under their authority.

*Mark*, 746 N.E.2d at 419–20. Geiersbach makes no direct claim against Tri–State. Rather, he claims only that Dave and Josh were acting as agents of Tri–State and that the university is vicariously liable for their actions. However, we have held above that the trial court properly granted the summary judgment in favor of the coaches. Additionally, Geiersbach has not presented this court with any evidence of any action beyond what was expected in the game. Therefore, the trial court properly granted the motion for summary judgment in reference to the university.

### *Conclusion*

A participant in a sporting event or practice cannot recover against another participant absent proof of intentional injury or malicious or reckless behavior. Geiersbach failed to designate any evidence showing such conduct. Therefore, the trial court properly granted the motions for summary judgment. The trial court's decision is affirmed.

Affirmed.

KIRSCH, C.J. and SULLIVAN, J., concur.