Victor PARSONS and Gloria Parsons,
Appellants–Plaintiffs,

v.

ARROWHEAD GOLF, INC., Gary Oden
and Kathy Oden, Appellees–
Defendants.

No. 30A05–0612–CV–699.

Court of Appeals of Indiana.

Aug. 21, 2007.

Publication Ordered Oct. 5, 2007.

Ronald W. Frazier, Ian W. Thompson, Frazier & Associates, Richard L. Brown, Jr., Brown Tompkins & Lory, Indianapolis, IN, Attorneys for Appellants.

Dane A. Mize, Skiles Detrude, Indianapolis, IN, Attorney for Appellees.

**OPINION**

ROBB, Judge.

*Case Summary and Issues*

Victor Parsons was injured while golfing at Arrowhead Golf Course. Victor and his spouse, Gloria Parsons, brought suit against the golf course and its owners, Gary and Kathy Oden (collectively, "Arrowhead"). Arrowhead filed a Motion For Summary Judgment, which the trial court granted. The Parsonses now appeal, arguing that the trial court erred in applying the assumption of risk doctrine, that general principles of premises liability should control, and that the trial court improperly weighed the evidence. Concluding that the trial court properly found that Victor assumed the risks of playing golf, that Arrowhead did not breach any duty of care owed to its business invitee, and that the trial court did not improperly weigh the evidence, we affirm.

*Facts and Procedural History*

Arrowhead Golf Course is an 18–hole golf course located in Greenfield, Indiana, owned and operated by Gary and Kathy Oden. On August 2, 2002, Victor was playing golf at Arrowhead. After teeing off on the 16th hole and reaching the green, Victor drove his cart down the cart path toward the green, parked where the ropes were located, exited the cart and retrieved his putter from his golf bag. As he turned from the cart and stepped off of the cart path onto the green, he had to step down because of a drop from the asphalt path to the ground. He landed straight-legged, and he immediately experienced pain in his back.

Victor stated that the area where he stepped was between two ropes and two posts, which created a pathway from the cart path to the 16th green. He estimated the drop that he encountered was between four and twelve inches deep. Victor had not noticed this drop before and had not paid attention to it.

The majority of the surface at the golf course is grass and golfers are required to walk on grass in order to reach the green at every hole. Prior to the date of the incident, Victor had golfed at Arrowhead almost once per week for two or three years. At the time of the incident, the walkway from the cart path to the 16th green was located at the center of the green.

Gary Oden routinely inspects the course for hazardous conditions, such as dead trees or holes. Prior to August 2, 2002, during one of his inspections, he placed some stone in the area where Victor was injured. Also, Oden routinely places and moves signs to direct carts as fairway grass will start to wear down where the carts continue to drive over them. Oden also moves signs and ropes around to re-

direct carts so that a path is not worn in one particular spot.

The Parsonses filed their complaint on July 22, 2004, alleging that Arrowhead allowed Victor to play on a golf course that was negligently designed and unsafe; that the layout of the 16th hole was negligently designed; that the pathway to the green of the 16th hole was negligently maintained and unsafe; that Arrowhead failed to take reasonable measures to provide for Victor's safety; and that Arrowhead negligently failed to warn Victor of the dangerous condition of the golf course.

Arrowhead filed a motion for summary judgment on June 12, 2006. The motion claimed that Arrowhead was entitled to judgment as a matter of law because Victor was a voluntary participant in a sports activity and because there was no evidence of a defect on the property. A hearing was held on October 10, 2006, and on October 12, 2006, the trial court entered its Finding and Order of Summary Judgment in favor of Arrowhead. The trial court noted that Victor was a voluntary participant in the sporting activity of golf and thereby assumed the risk of injuries as a result of all reasonably foreseeable parts of the game, including traversing the grounds of the golf course. The court found that, as a matter of law, the risk encountered by Victor, stepping into a lower area off of a cart path, was a reasonably foreseeable part of the game. Further, the court found that Victor was familiar with the greens and the approaches, and that the undisputed evidence was that no complaints or previous injuries had ever been reported to Arrowhead concerning the 16th hole and its change of elevation. The court found there was no evidence that Arrowhead breached any duty of reasonable care owed under the context of a business invitee to a sporting activity. Thus, the court found there was no genu-

ine issue as to any material fact. The Parsonses now appeal.

## Discussion and Decision

### I. Summary Judgment Standard of Review

Summary judgment is appropriate only if the evidence shows there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Bowman ex rel. Bowman v. McNary,* 853 N.E.2d 984, 988 (Ind.Ct.App.2006). We must construe all facts and reasonable inferences drawn from those facts in favor of the nonmoving party. *Id.* Our review of a summary judgment motion is limited to those materials designated to the trial court, and we must carefully review the decision on such motions to ensure that parties are not improperly denied their day in court. *Id.* "All trial court rulings should be presumed to be correct, but in the context of summary judgment proceedings we will not hesitate to reverse a trial court's ruling if it has misconstrued or misapplied the law, failed to consider material factual disputes, or improperly considered immaterial factual disputes." *Id.* (quoting *Beta Steel v. Rust,* 830 N.E.2d 62, 68 (Ind.Ct.App. 2005)).

### II. Standard of Care

A body of caselaw specifically addressing sporting events, and golf in particular, has evolved in recent years. We have held that the standard of care that applies between co-participants in a "sports activity" is different than the reasonable care standard that was developed to guide people in their day-to-day lives. *Geiersbach v. Frieje,* 807 N.E.2d 114, 118 (Ind.Ct.App. 2002), *trans. denied.* "Athletes ... choose to participate in sports. Sports, by their nature, involve a certain amount of inherent danger. We believe that the proper standard of care for sporting events and

practices should be to avoid reckless or malicious behavior or intentional injury." *Id.* We determined that those participating in a sporting event should be precluded from recovering for injuries received resulting from dangers or conduct inherent in the game unless they prove that the conduct was reckless or the injury was intentional. *Id.* at 120. In *Gyuriak v. Millice,* 775 N.E.2d 391 (Ind.Ct.App.2004), *trans. denied,* a golfer who was struck in the head and injured by another player's errant tee shot during a charity golf outing claimed the other player's negligence and recklessness caused his injury. There, the trial court granted summary judgment for the other player. We affirmed, holding that the golfer assumed the risk of being struck by another golfer's ball, and therefore the other player did not owe a duty of care with regard to his tee shot.

> This is because the primary assumption of risk occurs when an individual, by voluntarily engaging in an activity, consents to those risks that are inherent in and arise by virtue of the nature of the activity itself. In such cases, the participant is owed no duty with regard to such inherent and ordinary risks.

*Gyuriak,* 775 N.E.2d at 394 (citations omitted).

Later, in *Geiersbach,* we clarified the confusion caused by "incurred risk" and "assumption of risk" language. "Rather than employing the misleading language of 'incurred risk' and 'assumption of risk,' we prefer to resolve the issues in this case by merely determining whether the risks were inherent in the sport." *Geiersbach,* 807 N.E.2d at 119. "Athletes who choose to participate in sports must accept that those sports involve a certain amount of inherent danger. Therefore, the proper standard of care for sporting events and practices should be to avoid reckless or malicious behavior or intentional injury." *Id.* We noted:

> Those participating in the event or practice should be precluded from recovering for injuries received resulting from dangers or conduct inherent in the game unless they prove that the conduct was reckless or the injury was intentional. . . . Such a danger is inherent in the game and the participant should not be able to recover from the player, team or stadium without proving recklessness or that the injury was somehow intentional.

*Id.*

### III. Motion for Summary Judgment

#### A. Negligence

■ The Parsonses argue that the trial court erred in holding their claims are barred by the assumption of risk. They agree Victor was a voluntary participant in the game of golf. However, they assert he did not assume the risk of a defect in a designated walkway from the cart path to the green, which they argue caused his injury. The Parsonses state this defect is not an inherent and ordinary part of the game of golf.

■ To recover on a theory of negligence, a plaintiff must establish: (1) a duty owed by the defendant to the plaintiff, arising from the relationship between the defendant and the plaintiff; (2) breach of this duty by the defendant; and (3) an injury to the plaintiff proximately caused by the breach. *Lincke v. Long Beach Country Club,* 702 N.E.2d 738, 740 (Ind. Ct.App.1998), *trans. denied.* "Generally, whether a duty exists is a question of law for the court to decide, although sometimes the existence of a duty depends upon underlying facts that require resolution by a trier of fact." *Bowman,* 853 N.E.2d at 990. "Absent a duty, there can be no breach and, therefore, no recovery in neg-

ligence." *Id.* (quoting *Williams v. Cingular Wireless,* 809 N.E.2d 473, 476 (Ind.Ct. App.2004), *trans. denied).*

■■ The *Bowman* court noted that a court may determine that no duty exists based on consideration of the following three factors: (1) the relationship between the parties; (2) the reasonable foreseeability of harm to the person injured; and (3) public policy concerns. 853 N.E.2d at 990 (citing *Heck v. Robey,* 659 N.E.2d 498, 505 n. 11 (Ind.1995) (quoting *Webb v. Jarvis,* 575 N.E.2d 992, 995 (Ind.1991))). We will apply the same factors.

> We first consider the relationship of the parties.
>
> "In determining whether a relationship exists that would impose a duty, we must consider the nature of the relationship, a party's knowledge, and the circumstances surrounding the relationship." *Downs v. Panhandle Eastern Pipeline Co.,* 694 N.E.2d 1198, 1203 (Ind.Ct.App.1998), *trans. denied.* A duty of reasonable care is not owed to the world at large, but must arise out of a relationship between the parties.

*Bowman,* 853 N.E.2d at 990 (citation omitted). Here, the relationship between the Parsonses and Arrowhead was based on Victor's participation in the game of golf. Victor paid a fee to play golf at Arrowhead, and was injured while stepping from the cart path to the grass. The undisputed evidence is that Victor was familiar with both the game of golf and the golf course as he had golfed at Arrowhead "almost every Sunday morning between May and October for two to three years." Appellant's App. at 43.

■ Regarding foreseeability, this court has acknowledged "the risk of injury is inherent to some degree in all athletic activities and ought to be apparent...." *Bowman,* 853 N.E.2d at 991. However, "a plaintiff's foreknowledge of risk is not a complete defense pursuant to the Act and is not determinative of whether the defendant owed the plaintiff a duty." *Id.* Golf is played outside, on grassy and often uneven surfaces. Injuries from stepping on uneven surfaces are an inherent risk of the game. Therefore, it was reasonably foreseeable that Victor could have been injured while stepping onto the 16th hole green at Arrowhead. However, there was no evidence that the condition of the area from the cart path to the green at the 16th hole was any different on the date Victor was injured than it was the many times Victor played the course prior to that date.

■ With regard to our consideration of public policy, we note that "[v]arious factors affect this policy consideration, including convenience of administration, capacity of the parties to bear the loss, a policy of preventing future injuries, and the moral blame attached to the wrong-doer." *Bowman,* 853 N.E.2d at 991. Victor was in the best position to prevent the injury that occurred while he was golfing. The participant chooses the golf course on which he plays and walking on the course is absolutely a part of the game.

Our review of the relationship of the parties, the foreseeability of harm, and the public policy considerations dictate that Arrowhead did not owe the Parsonses a duty to prevent Victor's type of injury, which was an inherent risk of the game of golf. The trial court found that Victor was a voluntary participant in the sporting activity of golf. Victor "thereby assumed the risk of injuries as a result of all reasonably foreseeable parts of the game. The assumed risks not only included flying golf balls, but also traversing the grounds of the golf course." Appellant's App. at 6–7. The trial court further found that as a matter of law, the risk Victor encountered of stepping into a lower area off of a cart

path was a reasonably foreseeable part of the game of golf. *Id.* Consideration of whether the injury-causing event was an inherent or reasonably foreseeable part of the game is a correct evaluation, under an objective standard as a question of law for courts to decide. *Bowman,* 853 N.E.2d at 993. We conclude as a matter of law that Arrowhead owed the Parsonses no duty to prevent the type of injury Victor sustained.

### B. Premises Liability

■ The Parsonses further contend the facts in this case are more analogous to a slip-and-fall premises liability case than a case involving an injury in a sporting event. The Parsonses argue under the more suitable premises liability analysis, there are genuine issues of material fact regarding whether Arrowhead breached a duty of reasonable care owed to Victor, its business invitee.

General premises liability principles have been applied to cases involving injuries sustained on a golf course. In *Lincke v. Long Beach Country Club,* the plaintiff was injured while standing in the rough when he was struck by a golf ball hit from another hole and sued the country club claiming that the club failed to maintain the golf course in a reasonably safe condition. 702 N.E.2d at 740. The court stated:

A landowner is liable for harm caused to an invitee by a condition on the land only if the landowner (1) knows of or through the exercise of reasonable care would discover the condition and realize that it involves an unreasonable risk of harm to such invitees; (2) should expect that the invitee will fail to discover or realize the danger or fail to protect against it; and (3) fails to exercise reasonable care in protecting the invitee against the danger.

*Id.* at 740 (citing *Douglass v. Irvin,* 549 N.E.2d 368, 370 (Ind.1990)).

The Parsonses specifically claim there are facts from which reasonable inferences can be drawn establishing that Arrowhead had actual knowledge of the condition of the walkway at the 16th green, and took steps to remedy it before the incident occurred, but failed to adequately protect their invitees. Gary Oden routinely inspected the golf course for dangerous conditions such as holes and during one of these inspections, he placed some stone in the walkway from the cart path to the 16th green. The Parsonses state a reasonable inference that can be drawn is that Gary considered the area to be a potential danger to his invitees and he wanted to protect them from that danger. Further, Gary testified that all along the 16th hole there is a slight decline, but that the decline is more pronounced in the walkway area to the 16th green. The Parsonses state that Gary could have easily moved the posts and rope to create a new walkway from the cart path to the 16th green to eliminate the drop. The Parsonses further argue Arrowhead should have expected that Victor would fail to discover or realize the danger and fail to protect against it. The Parsonses state that the drop from the cart path to the walkway is not an open and obvious condition. Victor testified that the drop from the cart path to the grass was lower than it appeared to be, that he had never noticed it before, and had never paid any attention to it. Further, the Parsonses argue Arrowhead should understand that golfers would fail to discover this condition as their concern is often directed at the placement of their ball and their next shot. The Parsonses also assert Arrowhead failed to exercise reasonable care in protecting them from the danger.

The Parsonses also charge the trial court improperly weighed the evidence. They point to Victor's statement that he had never noticed the drop-off before and Gary's acknowledgment that the drop-off is more pronounced in the walkway area to the green. The Parsonses argue that these facts indicate the existence of a genuine issue of material fact regarding whether a defect existed on the premises.

Arrowhead counters that the condition from the cart path to the green did not involve an unreasonable risk of harm to Victor. Rather, traversing the topographical features of a golf course is an inherent part of the game of golf. Golf is played outside and requires that players walk over grass and other natural conditions of the land on which the course is located. Further, Arrowhead argues, an experienced golfer like Victor is expected to discover such conditions. Prior to the accident, Victor golfed at Arrowhead many times. There was no evidence to suggest the condition of the area from the cart path to the green at the 16th hole was any different on the day in question than it was the dozens of times he played the course in the three years prior to his alleged accident.

Application of the principles of premises liability does not lead us to conclude that the trial court erred in granting summary judgment to Arrowhead. The Parsonses response to Arrowhead's motion for summary judgment failed to meet the burden of setting forth specifically designated facts regarding a breach of duty by Arrowhead. They failed to provide any evidence showing an unreasonable risk of harm. We cannot say the trial court improperly weighed the evidence or erred in finding there is no evidence that Arrowhead breached any duty to its business invitee. We agree with the following finding by the trial court:

The Court applies an objective standard when reviewing the evidence and knowledge of the Defendant/owners. Because golf is not played on a table top surface, a golfer must understand that it is an inherent and reasonably foreseeable part of the game that the ground will change elevation and that he, or she, must be alert to those changes. Absent unusual or changed circumstances and evidence of reckless disregard by the owners, the Court could not find other than that the Plaintiff assumed the risk in playing golf. It is clear that the area "between the chains", was walked by many people getting to the 16th green and if a hazard, was not of such a hazard that caused any notice to other player or owner.

Appellant's App. at 8.

### Conclusion

The trial court properly concluded that there are no issues of material fact and that Arrowhead is entitled to judgment as a matter of law. We affirm.

Affirmed.

VAIDIK, J., and BRADFORD, J., concur.

### ORDER

On August 21, 2007, the Court handed down its opinion in this appeal marked Memorandum Decision, Not for Publication. The Appellees, by counsel, have filed a Motion Publish Memorandum Decision.

Having considered the matter, the Court FINDS AND ORDERS AS FOLLOWS:

1. The Appellees' Motion to Publish Memorandum Decision is GRANTED, and this Court's opinion heretofore handed down in this cause on August 21, 2007, marked Memorandum Decision, Not for

Publication is now ORDERED PUBLISHED.

ROBB and BRADFORD, JJ., concur.

VAIDIK, J., dissents.