## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

08/31/2017, 9:28 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Robert Oakley
Carmel, Indiana

ATTORNEY FOR APPELLEES

Jeremy M. Dilts
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Melissa Burklow, <br> *Appellant-Plaintiff,* <br><br> v. <br><br> Dearborn County and Dearborn County Sheriff, <br> *Appellees-Defendants* | August 31, 2017 <br><br> Court of Appeals Case No. 15A05-1611-PL-2519 <br><br> Appeal from the Dearborn Superior Court <br><br> The Honorable Jonathan N. Cleary, Judge <br><br> The Honorable Darrell Auxier, Special Judge <br><br> Trial Court Cause No. 15D01-1409-PL-64 |

**Altice, Judge.**

## Case Summary

[1] Melissa Burklow appeals from the trial court's grant of summary judgment in favor of Dearborn County (the County) on her claim alleging violations of Title II of the Americans with Disabilities Act (ADA) and in favor of the Dearborn County Sheriff (the Sheriff) (collectively, the Defendants) with respect to her claim for defamation.

[2] We affirm.

## Facts & Procedural History

[3] Burklow has been diagnosed with narcolepsy and cataplexy.[1] Throughout the course of 2011, Burklow was involved in a number of incidents involving the Sheriff's Department. Burklow reported that she had been the victim of identity theft and made claims of theft of personal property and trespassing. In another incident, a neighbor reported being bitten by Burklow's dog. Officers responding to these calls prepared police reports in which they noted the difficulty in communicating with Burklow and/or commented on her demeanor.

[4] On or about October 11, 2011, Burklow's adult daughter called the Sheriff's Department out of concern for Burklow. Burlklow's daughter reported that Burklow had been "drinking wine all day" and had been in bed and was

---

[1] Cataplexy is defined as "a condition characterized by sudden, brief attacks of muscle weakness sometimes causing the body to fall helplessly, that is usually triggered by strong emotion: often associated with narcolepsy." www.dictionary.com/browse/cataplexy?s=t (last visited July 11, 2017).

"crying." *Appellant's Appendix Vol. 2* at 60. Burklow's daughter also reported that when she tried to console Burklow, Burklow hit her in the face. Burklow then left the residence and on her way out told her daughter that "she was going to a parking lot and was going to shoot herself." *Id*.

[5] Burklow returned home a couple hours later, and police were again dispatched to her residence. After officers confronted Burklow, she began to suffer a cataplectic episode in which she fell to the floor in a "curled up, stiff state."[2] *Id*. at 61. The officer reported that Burklow could not move, but that she was able to talk. Although Burklow was not arrested that day, she was eventually charged with battery for striking her adult daughter.

[6] During the course of the investigation and prosecution of the battery charge and for purposes related to the identity-theft matter, Burklow made numerous visits to the Dearborn County Courthouse. Upon entering the courthouse, Burklow verbally requested the use of a wheelchair due to her fear of suffering a cataplectic episode. A wheelchair was provided on one occasion and she borrowed a wheelchair for another. Burklow asserts that on other occasions her wheelchair request was met "with suspicion and derision" or that she was simply told that no wheelchairs were available. *Appellant's Brief* at 10.

[7] Burklow maintains that she requested information from the County about how to contact the County's ADA Coordinator. Burklow asserts that the

---

[2] Burklow refers to these episodes of cataplexy as a "seizure." *Appellant's Brief* at 8.

information was never provided to her and that she obtained the desired information only after it was added to the County's website in January 2013. Thereafter, Burklow, with the help of her disability advocate, requested from the Sheriff copies of the police reports concerning the criminal proceedings involving her as well as reports related to her various interactions with police throughout 2011. Burklow's request was denied and it was explained to her that such documents were not available for public access.

[8] In addition to the above legal proceedings, Burklow was involved in custody proceedings with her ex-husband. In preparation therefor, Burklow met with Bobbie Hopes, a clinical psychologist charged with conducting an evaluation for the court's consideration of the custody matter. Dr. Hopes had been provided with police reports and various call sheets for incidents involving Burklow,[3] and Dr. Hopes discussed those matters with her. Dr. Hopes then submitted a report to the court to assist with the custody determination. In her report, Dr. Hopes discussed the various police reports and the information contained therein, quoting specifically an officer's statement that Burklow "was a known abuser of perscription [sic] medication."[4] *Appellant's Appendix Vol. 2* at 45. Dr. Hopes also noted in her report the characterization in the police records

---

[3] It is unclear from the record how Dr. Hopes became privy to the police and call reports. In any event, Burklow does not challenge the manner in which the reports were provided.

[4] This police report was prepared on October 20, 2011.

that Burklow was a "mental person" and notations that Burklow was alleged to have been diagnosed with "Bipolar Disorder." *Id.*

[9] On September 23, 2014, Burklow filed a complaint alleging that the County violated the ADA and that the Sheriff was liable for defamation. The Defendants filed a motion for summary judgment on February 29, 2016. The trial court held a summary judgment hearing on May 23, 2016. On August 10, 2016, the trial court entered its order granting summary judgment in favor of the Defendants and expressly determined such to be a final, appealable judgment. Burklow filed a motion to correct error, which the trial court denied. Burklow now appeals. Additional facts will be provided as necessary.

## Discussion & Decision

[10] We review summary judgment de novo, applying the same standard as the trial court. *Williams v. Tharp*, 914 N.E.2d 756, 761 (Ind. 2009). A party seeking summary judgment must establish that "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). The party moving for summary judgment bears the initial burden of establishing its entitlement to summary judgment. *Pfenning v. Lineman*, 947 N.E.2d 392, 396-97 (Ind. 2011). "Only then does the burden fall upon the non-moving party to set forth specific facts demonstrating a genuine issue for trial." *Id.* at 397. The reviewing court must construe the evidence in favor of the non-movant and resolve all doubts against the moving party. *Id.* The party appealing the grant

of summary judgment has the burden of persuading this court that the ruling was erroneous. *See Perkins v. Stesiak*, 968 N.E.2d 319, 321 (Ind. Ct. App. 2012), *trans. denied*.

## ADA

Burklow argues that the trial court erred in granting summary judgment in favor of the County with respect to her claims under the ADA. The County argues that summary judgment was appropriate because Burklow's ADA claims are barred by the applicable statute of limitation. Even if timely filed, the Defendants argue that Burklow's claims fail on the merits.

Congress enacted the ADA to eliminate discrimination and to create causes of action for qualified people who have faced discrimination. *See* 42 U.S.C. § 12101(b). The ADA provides in pertinent part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132. The ADA requires that the public entity make "reasonable modification" to allow the disabled person to receive the services or to participate in the public entity's programs. 28 C.F.R. § 35.130(b)(7).

Burklow claims that the County violated the ADA when the County did not provide her with her requested accommodation in the form of a wheelchair for use during court hearings. The basis for Burklow's request was her "fear of

possible injury" if she were "to suffer onset of cataplexy while appearing in court." *Appellant's Brief* at 15. Burklow, however, cannot show that she was entitled to a reasonable accommodation in the form of a wheelchair. In fact, it is undisputed that Burklow has not been prescribed a wheelchair or other assistive device and that she does not use a wheelchair when she is in any other public area, including running errands or shopping. We conclude that Burklow's subjective fear does not support a finding that the County was obligated under the ADA to provide her with her requested accommodation. *See Sistrunk v. Khan*, 931 F.Supp.2d 849, 857 (N.D.Ill. 2013) (holding that plaintiff's preference to use a wheelchair did not give rise to a tenable claim under the ADA). Thus, even if timely filed, Burklow's ADA claim based on the denial of her request for a wheelchair fails as a matter of law. Summary judgment was therefore proper.

[14] Burklow also claims that she was denied equal access to information and was treated in a discriminatory manner by individuals working for the County. As the basis for this claim, Burklow maintains that the County denied her requests for police reports and information regarding the criminal proceedings against her. The Sheriff designated evidence that Burklow's request for the police reports was denied because such records are not for public access. Burklow makes no argument that the denial of her request was based on her disability.

Burklow's ADA claim in this regard fails as a matter of law.[5]  As such, summary judgment was properly granted.

## Defamation

Burklow argues that summary judgment was improperly granted as to her defamation claim against the Sheriff.  Burklow's defamation claim is based on officer's statements included in police reports that were provided to Dr. Hope, who incorporated the contents thereof in the psychological report she prepared for the child custody proceedings.  Burklow maintains that the Sheriff's reports contained false and inaccurate statements that had "a drastic affect [sic] on her ability to successfully combat her ex-husband's efforts to modify the custody of their minor children." *Appellant's Brief* at 18.  In support of its motion for summary judgment, the Sheriff argues that Burklow's defamation claim was untimely filed.  Even if timely filed, the Sheriff argues that qualified immunity defeats Burklow's defamation claim.

To maintain an action for either per se or per quod defamation the plaintiff must demonstrate (1) a communication with defamatory imputation; (2)

---

[5] To the extent Burklow claims that the County's failure to provide her with the contact information for the County's ADA coordinator amounts to an ADA violation, Burklow has failed to provide cogent argument to support such a position.  Burklow cites 28 C.F.R. § 35.163, which concerns the requirement that a public entity provide information and signage at inaccessible entrances to the public entity's facilities that directs users to accessible entrances or a location where they can obtain information about accessible facilities. Burklow baldly asserts that such provision obligated the County to provide her the information she requested. Further, there is no evidence that even remotely suggests that the denial of her information request was in any way related to her disability.  Thus, even accepting Burklow's allegations as true, she fails to state a tenable claim under the ADA.

malice; (3) publication; and (4) damages. *Kelley v. Tanoos*, 865 N.E.2d 593, 596-97 (Ind. 2007). The qualified privilege doctrine operates to protect "communications made in good faith on any subject matter in which the party making the communication has an interest or in reference to which he has a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty." *Kelley v. Tanoos*, 865 N.E.2d 593, 597 (Ind. 2007) (quoting *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992)).

[17] As a defense to defamation, the qualified privilege operates not to "change the actionable quality of the words published, but merely [to] rebut[] the inference of malice that is [otherwise] imputed." *Holcomb v. Walter's Dimmick Petroleum, Inc.*, 858 N.E.2d 103, 106 (Ind. 2006) (internal quotation marks omitted). To merit its protection, "[t]he burden is upon the defendant in the first instance to establish the existence of a privileged occasion for the publication, by proof of a recognized public or private interest which would justify the utterance of the words." *Bals*, 600 N.E.2d at 1356. In the absence of a factual dispute, the applicability of the privilege is a question of law to be determined by the court. *Id*. (citing *Bals*, 600 N.E.2d at 1356).

[18] The facts here are not in dispute. The alleged defamatory statements originated in police records that were produced in conjunction with the incidents involving Burklow. Notations in the police records that Burklow may abuse prescription medication and that she had been diagnosed with bipolar disorder were documented as they were reported by others to the responding officer. These undisputed facts cannot support a finding of malice. The alleged defamatory

communications were clearly made in good faith by officers acting in the course of their duties by documenting their interactions with Burklow. Such statements fall within the qualified privilege doctrine.

[19] We further note that, at the very least, Burklow cannot establish the publication element of a defamation claim. The reports were internal documents and only produced to Dr. Hope who was charged with conducting an evaluation for purposes of a judicial proceeding regarding custody. Assuming Burklow's defamation claim was timely filed, we conclude that the undisputed facts establish that such claim cannot succeed as a matter of law. Summary judgment was therefore proper.

[20] Judgment affirmed.

[21] Kirsch, J. and Mathias, J., concur.