ATTORNEYS FOR APPELLANT
James R. Branit
Mitchell H. Frazen
Nicholas J. Parolisi, Jr.
Chicago, Illinois

ATTORNEYS FOR AMICUS CURIAE
INDIANAPOLIS INDIANS
Andrew B. Janutolo
R.D. Zink
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
Walter J. Alvarez
Duke T. Escue
David A. Wilson
Crown Point, Indiana

Robert F. Peters
Merrillville, Indiana



FILED

Jun 27 2014, 9:18 am

CLERK
of the supreme court,
court of appeals and
tax court

# In the
# Indiana Supreme Court

No. 45S03-1308-CT-531

SOUTH SHORE BASEBALL, LLC D/B/A GARY
SOUTH SHORE RAILCATS AND NORTHWEST
SPORTS VENTURE, LLC,

*Appellants (Defendants below),*

v.

JUANITA DEJESUS,

*Appellee (Plaintiff below).*

Appeal from the Lake Superior Court, No. 45D02-0911-CT-251
The Honorable Calvin Hawkins, Judge

On Petition to Transfer from the Indiana Court of Appeals, No. 45A03-1205-CT-222

**June 27, 2014**

**Massa, Justice.**

"It's hard not to be romantic about baseball."[1]  But are stadiums and franchises, by virtue of baseball's status as our national pastime, governed not by our standard principles of premises liability but rather entitled to a special limited-duty rule?  We think not.  Nevertheless, we find the defendant in this case is entitled to summary judgment, so we reverse the trial court.


**Facts and Procedural History**


On May 23, 2009, Juanita DeJesus, a fan of the minor-league baseball team South Shore RailCats, attended the team's opening day game at their home stadium, the U.S. Steelyard in Gary, Indiana.  DeJesus had obtained two tickets from her friend Margie Comacho.  On the back of the ticket, the following text was printed:

> This ticket is a revocable license.  Admission may be refused or ticket holder rejected at the sole discretion of South Shore Baseball, LLC (the Gary South Shore RailCats).  The Gary South Shore RailCats may refuse admission to, or eject, any ticket holder without refund if the holder fails to comply with these terms, is deemed to be acting in a disorderly manner, or does otherwise not comply with Stadium, game day and Gary South Shore RailCats policies.  The ticket holder assumes all risks incident to the game or related events to which this ticket admits holder; including risk of loss, stolen or damaged property, and personal injury.

App. at 76, Tr. at 4–5.  There was also a provision stating "No refunds or exchanges.  This ticket may not be transferred or resold."  App. at 138–41, 165.  Finally, there was a warning that cautioned spectators about "the danger of being injured by . . . thrown or batted balls."  App. at 76, 165.

---

[1] "Moneyball" (Columbia Pictures 2011); see also Flood v. Kuhn, 407 U.S. 258, 286 (1972) (Douglas, J., dissenting) (claiming the majority's "romantic view" of the sport was responsible for what he viewed as the incorrect decision to exempt professional baseball's reserve system from federal antitrust laws).

DeJesus and her fiancé James Kerr arrived at the stadium, entered through the home plate gate, and walked down to their seats in a lower section along the first base line. The rest of their party—Comacho and her niece—had already arrived. DeJesus walked down the aisle between Sections 110 and 111 to get to her seat. At the end of that aisle, a sign read "Please Be Aware Of Objects Leaving The Playing Field." App. at 77, 79, 81.

DeJesus and her party sat in section 111, which falls just outside of the protective netting behind home plate. Section 110 is behind the netting, but the netting ends in the aisle between Section 110 and Section 111, and there is no netting between the fans seated in Section 111 and the playing field. Before the game began, DeJesus heard an announcer warn the fans to watch out for objects leaving the field of play.

Just after the start of play, the second batter hit a pop-up foul ball. DeJesus saw the batter make contact with the ball, and as she looked up to see where it had gone, it hit her in the face. As a result, she suffered serious injuries, including several fractured facial bones and permanent blindness in her left eye.

DeJesus sued South Shore Baseball and the Steelyard,[2] alleging she "was sitting in an area that was immediately outside of the area that was protected by the screening and, shortly after the game began, was struck in the face with a foul ball that caused her to incur serious permanent personal injuries" and the defendants "were negligent in failing to make [the] premises reasonably safe for [her], a business invitee." App. at 38. She claimed the defendants breached their duty to her because they failed to extend the protective netting far enough along the foul ball line.

---

[2] As the Steelyard is merely the name of the ballpark and not a separate entity, parties subsequently stipulated to its dismissal from the case.

The defendants moved for summary judgment, arguing DeJesus was a mere licensee and therefore South Shore fulfilled its duty to warn her of known latent dangers.[3] Before responding to the defendants' motion, DeJesus amended her complaint[4] to add an allegation that both defendants were negligent in the design, construction, and maintenance of the ballpark by failing to provide sufficient protective screening. When she did file her response, DeJesus contended (1) she was not a licensee but rather an invitee, and (2) the defendants "breached the standard of care for a public baseball stadium because they failed to extend the netting continuously to both first and third base." App. at 91. In support of her second argument, DeJesus designated the affidavit of Dr. Alan R. Caskey, an expert in the design of sport and recreation facilities. Dr. Caskey opined "there should have been fence netting continuously from first base to third to protect fans . . . from . . . foul balls." App. at 170–71.

Less than one month after DeJesus filed these responsive materials, we decided Pfenning v. Lineman, 947 N.E.2d 392 (Ind. 2011). In Pfenning, a young woman was driving a beverage cart during a golf outing when she was hit by an errant golf ball and sustained injuries to her mouth, jaw, and teeth. Id. at 397. She sued the golf course on a theory of premises liability, and the trial court granted the defendant's motion for summary judgment. Id. at 396. The plaintiff appealed, and we affirmed the trial court: "We find that the undisputed designated evidence conclusively establishes that crucial aspects of two of the elements of premises liability are not satisfied. There is no showing that (a) the Elks should have reasonably expected that its invitees

---

[3] The defendants initially argued DeJesus voluntarily assumed the risk of injury when she attended the game and sat in an unscreened seat, but they abandoned that claim during the hearing on their motion. They also contended DeJesus hadn't submitted any evidence or expert testimony to establish breach of duty, but acknowledged at the hearing that DeJesus had hired an expert, who opined *all* baseball spectator seating should be protected by netting.

[4] In her amended complaint, DeJesus purported to add Northwest Sports Ventures LLC as a defendant, but as that was the former name of South Shore Baseball, the trial court treated the two entities as one and the same. DeJesus also added the City of Gary as a defendant, but the City moved to dismiss the claims against it, and the trial court granted that motion. DeJesus does not here appeal that dismissal.

would fail to discover or realize the danger of wayward golf drives, and (b) the risk of being struck by an errant golf ball involved an unreasonable risk of harm." Id. at 407.

On March 16, 2012—after both parties had a chance to address Pfenning in supplemental briefing—the trial court held a hearing on the defendants' motion for summary judgment, to which they had added the argument that DeJesus's claim was precluded by our holding in Pfenning. In a summary order, the trial court denied the defendants' motion, but at defendants' request, it certified that order for discretionary interlocutory appeal, and our Court of Appeals accepted jurisdiction.

In a published opinion, a unanimous panel concluded there was no genuine of issue of material fact as to either DeJesus's premises liability claim or as to her negligence claim:

> With respect to DeJesus's claim that [defendants] were liable for her injuries under the theory of premises liability, we apply the Indiana Supreme Court's holding in Pfenning to the instant matter and conclude that the undisputed designated evidence conclusively establishes that crucial aspects of two of the elements of premises liability are not satisfied. There is no showing that (a) the Appellants should have reasonably expected that their invitees would fail to discover or realize the danger of foul balls entering the stands, and (b) the risk of being struck by a foul ball involved an unreasonable risk of harm. With respect to DeJesus's negligence claim, we adopt the majority rule that the operator of a baseball stadium does not have a duty to place protective screening continuously from first to third base, but rather only in the most dangerous area, i.e., the area directly behind home plate. For these reasons, we conclude that DeJesus cannot prevail on her claims against the Appellants.

S. Shore Baseball, LLC v. DeJesus, 982 N.E.2d 1076, 1085 (Ind. Ct. App. 2013) (internal citation omitted). Accordingly, the panel reversed the trial court and remanded the case with instructions to grant South Shore's motion for summary judgment. Id.

We granted transfer. S. Shore Baseball, LLC v. DeJesus, 992 N.E.2d 207 (Ind. 2013) (table); Ind. Appellate Rule 58(A).

5

**Standard of Review**

When we review a trial court's ruling on a motion for summary judgment, we stand in the trial court's cleats. Pfenning, 947 N.E.2d at 396. The moving party is entitled to summary judgment if "the designated evidentiary matter shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Ind. Trial Rule 56(C). Upon such a showing, the burden shifts to the non-moving party to point out specific facts that create a disputed issue for trial. Pfenning, 947 N.E.2d at 397. Like the trial court, we view all evidence and resolve all doubts in the fashion most favorable to the non-moving party. Shambaugh & Son, Inc. v. Carlisle, 763 N.E.2d 459, 461 (Ind. 2002).

**The Defendants Are Entitled to Summary Judgment**

South Shore argues the trial court should have granted its motion for summary judgment. We agree.

**A. We Decline to Adopt a Special Limited-Duty Rule for Baseball Stadiums and Franchises.**

As a threshold matter, amicus curiae Indianapolis Indians urges us to dispose of DeJesus's premises liability and negligence claims in one fell swoop by adopting the so-called Baseball Rule. Although we appreciate a well-turned double play, we will take this particular pitch.

The Baseball Rule provides that a ballpark operator that "provides screening behind home plate sufficient to meet ordinary demand for protected seating has fulfilled its duty with respect to screening and cannot be subjected to liability for injuries resulting to a spectator by an object leaving the playing field." Benejam v. Detroit Tigers, Inc., 635 N.W.2d 219, 225 (Mich. Ct. App. 2001). This special limited duty was first applied in Crane v. Kansas City Baseball &

Exhibition Co., 153 S.W. 1076, 1077 (Mo. Ct. App. 1913), in which the Missouri Court of Appeals stated a ballpark operator could satisfy his duty of reasonable care to spectators by "provid[ing] screened seats in the grand stand, and g[iving] plaintiff the opportunity of occupying one of those seats." Id. at 1077; see also Edling v. Kansas City Baseball & Exhibition Co., 168 S.W. 908, 910 (Mo. Ct. App. 1914) (adding that the duty to provide some screened seats includes an obligation "to exercise reasonable care to keep the screen free from defects"). It has been judicially adopted in many jurisdictions across the country.[5]

---

[5] See, e.g., Quinn v. Recreation Park Ass'n, 46 P.2d 144, 146 (Cal. 1935) ("The duty imposed by law is performed when screened seats are provided for as many as may be reasonably expected to call for them on any ordinary occasion; and if . . . a spectator chooses to occupy an unscreened seat, or . . . is unable to secure a screened seat and consequently occupies one that is not protected, he assumes the risk of being struck by thrown or batted balls; and if injured thereby is precluded from recovering damages therefor." (internal citations omitted)); Arnold v. City of Cedar Rapids, 443 N.W.2d 332, 333 (Iowa 1989) ("the owner or operator of a ballpark fully discharges any obligation to protect spectators from thrown or hit balls by providing seating in a fully protected area. Where a spectator rejects the protected seating and opts for seating that is not, or is less, protected the owner or operator is not liable."); Lorino v. New Orleans Baseball & Amusement Co., 133 So. 408, 409 (La. Ct. App. 1931) ("'the duty of defendants towards their patrons included that of providing seats protected by screening from wildly thrown or foul balls, for the use of patrons who desired such protection. Defendants fully performed that duty when they provided screened seats in the grand stand, and gave plaintiff the opportunity of occupying one of those seats.'" (quoting Crane, 153 S. W. at 1077)); Benejam, 635 N.W.2d at 222 ("courts generally have adopted the limited duty doctrine that prevents liability if there are a sufficient number of protected seats behind home plate to meet the ordinary demand for that kind of seating."); Swagger v. City of Crystal, 379 N.W.2d 183, 186 (Minn. Ct. App. 1985) ("there was no duty to appellants to do other than provide some protected seating."); Erickson v. Lexington Baseball Club, 65 S.E.2d 140, 141 (N.C. 1951) ("It is enough to provide screened seats, in the areas back of home plate where the danger of sharp foul tips is greatest, in sufficient number to accommodate as many patrons as may reasonably be expected to call for them on ordinary occasions."); Akins v. Glens Falls City Sch. Dist., 424 N.E.2d 531, 533 (N.Y. 1981) ("We hold that, in the exercise of reasonable care, the proprietor of a ball park need only provide screening for the area of the field behind home plate where the danger of being struck by a ball is the greatest."); Cincinnati Baseball Club Co. v. Eno, 147 N.E. 86, 87 (Ohio 1925) ("management performs its duty toward the spectators when it provides screened seats in the grand stand and gives spectators the opportunity of occupying them."); Hull v. Oklahoma City Baseball Co., 163 P.2d 982, 983 (Okla. 1945) (agreeing with defendants' contention that their "only duty . . . was to afford protected seats to those of the patrons who desired them and that defendants performed this duty by screening a reasonable number of seats."); Williams v. Houston Baseball Ass'n, 154 S.W.2d 874, 875 (Tex. Civ. App. 1941) ("The duty imposed by law is performed when screened seats are provided for as many as may be reasonably expected to call for them on any ordinary occasion." (quoting Ratcliff v. San Diego Base Ball Club, 81

South Shore Baseball also suggests our Court of Appeals essentially adopted the Baseball Rule seventy years ago when it decided Emhardt v. Perry Stadium, Inc., 113 Ind. App. 197, 46 N.E.2d 704 (1943).  But Emhardt, in which the plaintiff was hit by a foul ball after another spectator caught it and threw it back onto the field, turned upon the doctrines of assumed and incurred risk.  The Emhardt court said "one who attends a baseball game where adequate screened protection has been provided, and chooses to occupy an unscreened portion with knowledge of the ordinary hazards of the game incident to such location . . . 'incurs' or 'assumes' such ordinary known hazards."  Id. at 201, 46 N.E.2d at 706.  After Emhardt was decided, however, those doctrines were superseded by the Indiana Comparative Fault Act.  Heck v. Robey, 659 N.E.2d 498, 504–05 (Ind. 1995) abrogated on other grounds by Control Techniques, Inc. v. Johnson, 762 N.E.2d 104 (Ind. 2002); Ind. Code ch. 34-51-2.  Thus, even if Emhardt constituted a judicial adoption of the Baseball Rule, that adoption was based upon obsolete legal principles, and we do not find it instructive here.

Baseball undoubtedly occupies a special place in American life and culture; we have said before:

> That baseball has come to be the one great American outdoor game; that it is played during the summer season throughout the land by boy and youth and man, beginner, amateur, and professional, in country village, town, and city; that it is played out of doors in seasonable weather; that it engages the mind alike of the participant and the spectator in an entertaining way; that it trains the body to vigor and activity and to a degree the mind to alertness; that the playing of a game requires but a fraction of a half day; . . . that those who witness it find in it for the time a relief

P.2d 625, 626 (Cal. Ct. App. 1938))); Lawson By & Through Lawson v. Salt Lake Trappers, Inc., 901 P.2d 1013, 1015 (Utah 1995) (holding the defendant baseball team "had a duty to screen the area behind home plate and to provide screened seats to as many spectators as would normally request such seats on an ordinary occasion."); Turner v. Mandalay Sports Entm't, LLC, 180 P.3d 1172, 1175–76 (Nev. 2008) ("Once a stadium owner or operator complies with the rule's requirements by providing sufficient protected seating, the owner or operator has satisfied the legal duty of protection owed to its patrons.").

> mentally and physically from the stress of the intense life we as a
> people lead - are facts known of all men, and of which the courts
> and legislatures cannot be wholly ignorant.

Carr v. State, 175 Ind. 241, 263, 93 N.E. 1071, 1078–79 (1911).  Nevertheless, we are not convinced that any sport, even our national pastime, merits its own special rule of liability.  We have said before that "it is neither necessary nor appropriate for sports events to be distinguished and given such special treatment."  Beckett v. Clinton Prairie Sch. Corp., 504 N.E.2d 552, 555 (Ind. 1987).  But our own views on the wisdom of such a rule are irrelevant here; under our system of limited government, the legislative branch is entrusted with decisions of public policy.

> Judges and Justices are servants of the law, not the other way
> around. Judges are like umpires.  Umpires don't make the rules,
> they apply them.  The role of an umpire and a judge is critical.
> They make sure everybody plays by the rules, but it is a limited
> role.  Nobody ever went to a ball game to see the umpire.

Charles Fried, Balls and Strikes, 61 Emory L.J. 641, 642 (2012) (quoting Confirmation Hearing on the Nomination of John G. Roberts, Jr. to Be Chief Justice of the United States: Hearing Before the S. Comm. on the Judiciary, 109th Cong. 56 (2005) (statement of John G. Roberts, Jr., J., D.C. Circuit)).  Should the General Assembly wish to adopt the Baseball Rule in statutory form, of course, it is free to do so; indeed, four other state legislatures have done just that.  See Ariz. Rev. Stat. Ann. § 12-554 (1999); Colo. Rev. Stat. Ann. § 13-21-120 (1994); N.J. Stat. Ann. § 2A: 53A-43 to 2A:53A-48 (2006); 745 Ill. Comp. Stat. Ann. 38/10 (1992).  But we will not adopt it by judicial fiat.  Accord Rountree v. Boise Baseball, LLC, 154 Idaho 167, 173, 296 P.3d 373, 379 (2013) ("Declining to adopt the Baseball Rule leaves policy formulation to the deliberative body that is better positioned to consider the pros and cons of the issue.").[6]

---

[6] DeJesus argues South Shore had a duty, as a matter of law, to provide protective screening continuously from first to third base.  But she cites no authority—aside from Dr. Caskey's affidavit—to support this notion.  Indeed, this is the same argument the Crane court considered and rejected back in 1913.  Crane, 153 S.W. at 1077–78; see also Wex S. Malone, "Contributory Negligence and the Landowner Cases," 29

**B. There Is No Genuine Issue of Fact Regarding the Second Element of DeJesus's Premises Liability Claim.**

South Shore argues the trial court erred by denying its motion for summary judgment as to DeJesus's premises liability claim. That claim is governed by the well-known rule:

> A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he
>
> (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and
>
> (b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and
>
> (c) fails to exercise reasonable care to protect them against the danger.

Pfenning, 947 N.E.2d at 406 (citing Restatement (Second) of Torts § 343 (1965)). South Shore argues there is no genuine issue of fact as to the second of these. It cites Pfenning, in which we said: "We find no genuine issue of fact to contravene the objectively reasonable expectation by the Elks that persons present on its golf course would realize the risk of being struck by an errant golf ball and take appropriate precautions." Id.

And just so here. Both parties agree that South Shore notified DeJesus of the danger of foul balls by printing a warning on her ticket, posting a sign in the aisle near her seat, and

---

Minn. L. Rev. 61, 77 (1945) ("A stadium protected in all its areas would prove financially disastrous to management . . . and would outrage many devotees of baseball who like to watch the game without obstruction."). Therefore, just as we declined South Shore Baseball's invitation to adopt a special limited-duty rule for baseball, so too we decline DeJesus's invitation to adopt this special heightened-duty rule.

10

making an announcement over the loudspeaker before the beginning of the game. Based upon these efforts, South Shore would have had no reason to believe DeJesus would not realize the danger or that she would not protect herself against it. Thus, DeJesus cannot establish a genuine issue of fact as to the second element of her premises liability claim, and the trial court should have granted South Shore's motion for summary judgment on that claim. And as we have resolved this issue on that basis, we need not address South Shore's alternative argument regarding the first element of DeJesus's premises liability claim.

## C. There Is No Genuine Issue of Fact Regarding DeJesus's Negligence Claim.

Finally, DeJesus brought a negligence claim against South Shore, arguing that by erecting some protective netting in the stadium, South Shore assumed a duty of care to protect her from foul balls. We have said before that

> a duty may be imposed upon one who by affirmative conduct . . . assumes to act, even gratuitously, for another to exercise care and skill in what he has undertaken. It is apparent that the actor must specifically undertake to perform the task he is charged with having performed negligently, for without actual assumption of the undertaking there can be no correlative legal duty to perform the undertaking carefully.

Butler v. City of Peru, 733 N.E.2d 912, 917 (Ind. 2000) (quoting NIPSCO v. E. Chicago Sanitary Dist., 590 N.E.2d 1067, 1074 (Ind. Ct. App. 1992)). And we have adopted the rule laid down in the Restatement (Third) of Torts: Physical and Emotional Harm § 42 (2012), which states:

> An actor who undertakes to render services to another and who knows or should know that the services will reduce the risk of physical harm to the other has a duty of reasonable care to the other in conducting the undertaking if:
>
> (a) the failure to exercise such care increases the risk of harm beyond that which existed without the undertaking, or
>
> (b) the person to whom the services are rendered or another relies on the actor's exercising reasonable care in the undertaking.

11

<u>Yost v. Wabash Coll.</u>, 3 N.E.3d 509, 515 (Ind. 2014).

Assuming without deciding that South Shore undertook such a duty and put DeJesus at greater risk of harm by breaching it, DeJesus's claim nonetheless fails as a matter of law because she does not allege an increased risk of harm and cannot establish reliance. In her deposition, DeJesus testified she had seen foul balls enter the stands at RailCats games before. She even admitted she knew, when she was sitting in her seat, "there could be a chance that the ball could come that way." App. at 73. This undisputed evidence shows DeJesus was not relying on the netting to protect her from the danger of foul balls. Therefore, South Shore was entitled to summary judgment on this issue as well.

**Conclusion**

We therefore reverse the trial court and remand this case for further proceedings consistent with our opinion today.

Dickson, C.J., and Rucker, David, and Rush, JJ., concur.