

**FILED**

Jun 26 2020, 12:05 pm

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Jack A. Tandy
Tandy Law Firm, LLC
Shelbyville, Indiana

R. Robert Yeager
Yeager Good & Baldwin
Shelbyville, Indiana

ATTORNEYS FOR APPELLEES

Peter J. Sacopulos
Sacopulos Johnson & Sacopulos
Terre Haute, Indiana

Scott E. Andres
Christopher J. Appel
Due Doyle Fanning & Alderfer, LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Civilo Cruz, <br><br>*Appellant-Plaintiff,* <br><br> v. <br><br> New Centaur, LLC, Centaur Acquisition, LLC d/b/a Indiana Grand Racing & Casino, Michael E. Lauer, Michael E. Lauer Racing Stables, Inc., Penny Lauer, and Marcelle Martins, <br><br> *Appellees-Defendants.* | June 26, 2020 <br><br> Court of Appeals Case No. 19A-CT-3003 <br><br> Appeal from the Shelby Superior Court <br><br> The Honorable R. Kent Apsley, Judge <br><br> Trial Court Cause No. 73D01-1806-CT-26 |

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Plaintiff, Civilo Cruz (Cruz), appeals the trial court's grant of summary judgment in favor of Appellees-Defendants, New Centaur, LLC, and Centaur Acquisition, LLC, d/b/a Indiana Grand Racing & Casino (collectively, Indiana Grand), and its award of partial summary judgment in favor of Appellees-Defendants, Michael E. Lauer, Michael E. Lauer Racing Stables, Inc., Penny Lauer (collectively, the Lauers). The Lauers cross-appeal the trial court's partial denial of summary judgment in favor of Cruz.

We affirm in part, reverse in part, and enter full summary judgment for the Lauers.

# ISSUES

Cruz presents us with two issues, which we restate as:

> (1) Whether a genuine issue of material fact precluded the entry of summary judgment on Cruz's claims of negligence against Indiana Grand; and

> (2) Whether a genuine issue of material fact precluded the entry of summary judgment on Cruz's negligence claims against the Lauers.

On cross-appeal, the Lauers present us with one issue, which we restate as: Whether a genuine issue of material fact precluded the entry of summary judgment on the issue of Martins' employment status.

# FACTS AND PROCEDURAL HISTORY

[4] Indiana Grand owns and operates the Indiana Downs horse racing track (the track) located in Shelby County, Indiana. When races are not being held at the track, racehorses are exercised and trained there. It is not uncommon for exercise riders to be thrown from horses and for horses to become loose during training. Indiana Grand has mounted employees, called outriders, who are tasked with monitoring safety on the track during training and assisting when necessary. In the event that a horse gets loose, the outriders are present to attempt to corral the horse and alert a clocker via radio so that a siren can be activated to alert others using the track to the presence of the loose horse.

[5] Marcelle Martins (Martins) is an experienced jockey licensed by the Indiana Horse Racing Commission. In 2017, Martins was looking for work as a jockey and exercised racehorses at the track without compensation in hopes of being hired for races, which is a standard practice in the jockey industry. In 2018, Martins began exercising horses for Michael E. Lauer Racing Stables at the track. As part of her work, Martins frequently exercised a horse named Accessorizing which was owned by Penny Lauer and trained by Michael Lauer.

[6] On May 7, 2018, Martins exercised Accessorizing at the track. Cruz, who is an experienced exercise rider, was exercising a horse he owned named Glitter Cat. As Martins finished a turn around the track on Accessorizing, the horse began to run out of Martins' control. Martins called for an outrider for assistance. Two Indiana Grand outriders were working the track that day, one of whom

attempted to gain control of Accessorizing's reins, without success. Martins was thrown from her mount, and Accessorizing ran toward a group of horses which included Glitter Cat, ridden by Cruz. Accessorizing collided with Glitter Cat, causing Cruz to be thrown to the ground and injured. After the collision, the clocker sounded the alert of a loose horse on the track.

[7]     On July 2, 2018, Cruz filed a complaint, which he amended on December 11, 2018, raising premises liability and negligence claims against Indiana Grand and raising respondeat superior and negligent hiring claims against the Lauers.[1] On August 23, 2019, Indiana Grand filed its motion, brief, and designation of evidence in support of summary judgment, arguing that it was entitled to judgment as a matter of law because it owed no duty of care to Cruz, who had assumed the risks of the inherently dangerous sport of horseracing. On August 26, 2019, the Lauers filed their motion, brief, and designation of evidence in support of summary judgment, adopting Indiana Grand's motion and additionally arguing that they could not be held liable for Martins' alleged negligence under a theory of respondeat superior because she was an independent contractor and not their employee. On September 23, 2019, Cruz filed his motion, brief, and designation of evidence in opposition to summary judgment, in which he argued, *inter alia*, that Indiana Grand had assumed a

---

[1] Cruz also named Martins as a defendant and raised negligence claims against her. Martins did not appear in the litigation and does not participate in this appeal.

duty of care toward him by employing outriders and using a loose horse alert system.

[8] On October 23, 2019, the trial court held a hearing on Indiana Grand's and the Lauers' motions for summary judgment. On November 21, 2019, the trial court entered its Order granting summary judgment to Indiana Grand and the Lauers on the issue of whether they could be found to have breached their duty of care toward Cruz. The trial court ruled that, pursuant to Indiana's sport activity jurisprudence, in the context of the sport of horseracing, Cruz was required to designate evidence supporting a finding that Appellees-Defendants had intentionally caused Cruz's injury or engaged in reckless conduct toward him, which he had failed to do. The trial court further found that

> [t]he injury suffered by Cruz, if any, was one that would be expected to occur in the sport generally. A [h]orse getting loose and running into other horses and riders is in the nature of what might be ordinarily expected in the sport of horse racing.

> Based upon the designated evidence, neither [Indiana Grand], nor [the Lauers], would have had any objective reason to think that Cruz would be oblivious to the danger involved or would fail to protect himself from it. The defendants had an objectively reasonable expectation that Cruz would realize the risk and take appropriate precautions.

(Appellant's App. Vol. II, p. 32). However, the trial court also partially denied the Lauers' motion because it found that genuine issues of material fact existed on the issue of whether Martins was an independent contractor or an employee of the Lauers.

Cruz now appeals and the Lauers cross-appeal. Additional facts will be provided as necessary.

# DISCUSSION AND DECISION

### I. *Standard of Review*

Summary judgment is appropriate if the designated evidence "shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Ind. Trial Rule 56(C). We review both the grant or denial of summary judgment *de novo* and apply the same standard as the trial court. *Kerr v. City of South Bend*, 48 N.E.3d 348, 352 (Ind. Ct. App. 2015). The party moving for summary judgment bears the initial burden of making a *prima facie* showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *Sargent v. State*, 27 N.E.3d 729, 731 (Ind. 2015). "Summary judgment is improper if the movant fails to carry its burden, but if it succeeds, then the nonmoving party must come forward with evidence establishing the existence of a genuine issue of material fact." *Id.* at 731-32. "All disputed facts and doubts as to the existence of material facts must be resolved in favor of the non-moving party." *Kerr*, 48 N.E.3d at 352. The non-moving party has the burden on appeal to persuade us that the trial court's grant of summary judgment was erroneous, but we will carefully assess the trial court's decision to ensure that the non-moving party was not improperly denied his day in court. *Id*. We will affirm the trial court's summary judgment ruling on any basis supported by the designated evidence. *Hussain v. Salin Bank & Trust Co.*, 143 N.E.3d 322, 328 (Ind. Ct. App. 2020).

In addition, we note that the trial court entered findings of fact and conclusions of law in support of its judgment. Special findings are not required in summary judgment proceedings and are not binding on appeal. *AutoXchange.com. Inc. v. Dreyer and Reinbold, Inc.*, 816 N.E.2d 40, 48 (Ind. Ct. App. 2004). However, such findings offer this court valuable insight into the trial court's rationale for its review and facilitate appellate review. *Id.*

## II. *Indiana Sports-Injury Jurisprudence*

The parties each claim that Indiana's sports-injury law favors their summary judgment arguments, so we begin with an examination of how that body of law has developed in our state. In 2011, our supreme court issued the seminal case of *Pfenning v. Lineman*, 947 N.E.2d 392, 396 (Ind. 2011), in which it addressed the issue of a sports participant's liability to others for injury incurred during sporting activity. Sixteen-year-old Pfenning accompanied her grandfather to a golf scramble, where she, accompanied by an employee of the scramble's organizer, drove a beverage cart owned by the golf course. *Id*. at 397. While driving the beverage cart around the course, Pfenning was struck in the mouth by a golf ball, suffering injuries. *Id*. Neither Pfenning nor her companion heard the golfer yell "fore." *Id*.

Pfenning brought suit against the owner of the golf course, the scramble organizer, her grandfather, and the golfer who hit the shot that injured her, raising claims of general negligence, negligent supervision, and premises liability. *Id*. at 396. All the defendants sought, and were awarded, summary judgment. *Id*. In affirming the grant of summary judgment on the claim of the

golfer's liability, the court noted that "strong public policy considerations favor the encouragement of participation in athletic activities and the discouragement of excessive litigation of claims by persons who suffer injuries from participants' conduct" and, thus, that sound policy reasons supported enhanced protection against liability to co-participants in sports events. *Id*. at 403. The court observed that a plaintiff seeking damages based on negligence must establish that the defendant owed him a duty, that duty was breached, and the plaintiff's injuries were proximately caused by the breach. *Id*. at 397. While the issue of breach of duty of care towards others engaged in the sport usually entails an evaluation of reasonableness by the fact-finder, the court adopted a new rule limited to sports activity cases that, as a matter of law, when a sports participant injures another while engaging in conduct ordinary to the sport, without intent or recklessness, the participant breaches no duty for purposes of a negligence claim. *Id*. at 404. The court held that the acts of hitting an errant golf shot and not yelling "fore" were activities within the range of ordinary conduct for golfers, and was, thus, reasonable as a matter of law, precluding a finding on the element of breach necessary for a negligence action. *Id*. at 404-05.

[14] In affirming the trial court's award of summary judgment for the golf course owner, our supreme court first observed that its new rule extending enhanced protection from liability to participants in sport did not extend to persons or entities beyond the participant who allegedly caused the injury at the base of the claim. *Id*. at 405. Some of Pfenning's claims against the course owner were framed as negligence allegations that the course owner had breached its duty of

care towards her, it had failed to follow its own safety protocols for providing safety instructions to beverage cart operators, and it was negligent for allowing a minor to operate the cart. *Id*. at 405-06. The court rejected Pfenning's formulation of separate negligence claims and addressed all her claims as sounding in premises liability due to the fact that it was the course owner being sued, the course's employees had controlled most of the details of the golf outing, and Pfenning's injuries had arisen from a condition on the premises. *Id*. at 406. The court went to apply well-established premises liability principles and found that there was no showing that the course owner should have reasonably expected that Pfenning would fail to discover or realize the danger of errant golf drives or the risk of being struck by an errant golf ball involved an unreasonable risk of harm. *Id*. at 407.

[15] In *South Shore Baseball, LLC v. DeJesus*, 11 N.E.3d 903, 905 (Ind. 2014), a spectator sued the operator of a baseball stadium where she was hit by a foul ball during a game. DeJesus sat just beyond the protective netting South Shore had erected behind home plate to protect spectators from foul balls, a danger ticket holders were warned about on their tickets, signage erected in the stadium, and through an announcement prior to the commencement of the game. *Id*. DeJesus was injured when a pop-up foul ball hit her in the face. *Id*.

[16] DeJesus brought claims of premises liability and negligence against South Shore, alleging, *inter alia*, that South Shore had breached its duty of care toward her by failing to extend the protective netting adequately along the foul ball line and that South Shore was negligent in the design, construction, and

maintenance of the ballpark which did not have adequate protective netting. *Id*. at 905-06. South Shore sought, and was denied, summary judgment. *Id*. at 906. We reversed the denial of summary judgment in light of *Pfenning*, and our supreme court agreed, finding that, in light of its multiple warnings regarding the dangers of foul balls, South Shore would have had no reason to believe that DeJesus would not realize the danger or that she would not protect herself from it. *Id*. at 910.

[17] As to DeJesus's negligence claims, the court addressed her argument that, by erecting the protective netting at its stadium, South Shore had assumed a duty of care to protect her from foul balls entering the stands. *Id*. The court noted that it had adopted the rule for assumption of duty from the Restatement (Third) of Torts which provides that

> An actor who undertakes to render services to another and who knows or should know that the services will reduce the risk of physical harm to the other has a duty of reasonable care to the other in conducting the undertaking if:
>
> (a) the failure to exercise such care increases the risk of harm beyond that which existed without the undertaking, or
>
> (b) the person to whom the services are rendered or another relies on the actor's exercising reasonable care in the undertaking.

*Id*. at 911. The court found that summary judgment on DeJesus's assumption of duty claim was merited because she did not allege an increased risk of harm and could not establish reliance, as her designated deposition testimony showed

that she had seen foul balls enter the stands at the stadium before and she admitted that she knew there was a chance she could be hit by a ball where she had sat on the day she was injured. *Id*.

[18] In *Megenity v. Dunn*, 68 N.E.3d 1080, 1084 (Ind. 2017), the court clarified what constituted "ordinary behavior" within a sport for purposes of the new rule set out in *Pfenning*. Megenity was injured during a karate class when Dunn performed a jump kick rather than the less powerful flying kick Megenity was expecting. *Id*. at 1082. Megenity sued Dunn, alleging that he had negligently, recklessly, and unreasonably injured her. *Id*. Dunn moved for summary judgment pursuant to *Pfenning*, arguing that the jump kick was ordinary behavior for karate, and, thus, that he breached no duty toward Megenity as a matter of law. *Id*. In affirming the trial court's grant of summary judgment to Dunn, our supreme court cited *Pfenning* and clarified that, in order to determine what is "ordinary behavior" for purposes of a *Pfenning* analysis, courts must look to the sport generally and not the specific activity that was being engaged in at the time of the injury. *Id*. at 1084. The court held that approach made sense, because "sports are imprecise and physically intense. And when Hoosiers play sports—performing activities ordinary in that context—they should not fear that judges will later armchair-quarterback their every movement." *Id*.

[19] With these principles in hand, we turn to the issues raised by Cruz.

## III. *Indiana Grand*

[20] In his Complaint, Cruz raised premises liability and negligence claims against Indiana Grand. In his appellate brief, Cruz acknowledges that if the facts alleged by him in his Complaint are considered sports activity consistent with *Pfenning*, *South Shore*, and *Megenity*, "the premises liability claim against Indiana Grand is subject to summary judgment." (Appellant's Br. p. 13). The issue of whether Martins and Cruz were engaged in a sports activity when Cruz was injured was not litigated by the parties during the summary judgment proceedings, and Cruz fails to develop any further argument on the issue. Accordingly, inasmuch as Cruz argues that he and Martins were not engaged in a sports activity when they exercised horses on May 7, 2018, Cruz has waived the issue. *See Cavens v. Zaberdac*, 849 N.E.2d 526, 533 (Ind. 2006) ("Issues not raised at the trial court are waived on appeal."); *see also* Ind. Appellate Rule 46(A)(8)(a) (providing that arguments must be supported by cogent reasoning, legal authority, and citations to the record).

[21] Cruz maintains that his "negligence claim based on the actions of Indiana Grand employees is distinct from the premises liability claim and should survive summary judgment." (Appellant's Br. p. 13). Cruz also maintains that his claim should survive because genuine issues of material fact existed about whether Indiana Grand had breached the duty of care it owed him after it assumed that duty by employing outriders and the loose-horse siren system. Cruz alleged negligence on Indiana Grand's part as follows:

14. On said date, [Indiana Grand] had a duty to maintain appropriate safety measures at the racetrack in conformity with rules of the racing profession and rules adopted by the Indiana Race Horse Commission. [Indiana Grand] failed in its duty to maintain appropriate safety measures at the racetrack on May 7, 2018, proximately causing the injuries to [Cruz].

(Appellant's App. Vol. II, p. 65). We find Cruz's argument to be unavailing for at least two reasons. In *Pfenning*, our supreme court found that her claims, including her claim that the golf course was negligent for failing to follow its own safety protocols, were truly claims sounding in premises liability, in part because she raised her claims against the property owner and her injuries were the result of a condition on the land. *Pfenning*, 947 N.E.2d at 406. We find the same to be true here: Although styled as a negligence claim, Cruz's allegation is truly in the nature of a premises liability claim because it is made against the track's owner and his injuries were caused by a condition at the track. As noted above, Cruz has conceded and waived his premises liability claims.

[22] In addition, *South Shore* illustrates that, in order to survive summary judgment on a claim of assumed duty, Cruz was required to allege and demonstrate fact issues on increased risk of harm to him as a result of Indiana Grand's alleged negligence or that he relied upon Indiana Grand's exercise of care with its safety measures. *See South Shore*, 11 N.E.3d at 911. Cruz's argument on appeal consists entirely of outlining the facts he considers showed that Indiana Grand breached its purported assumed duty of care toward him. Cruz does not direct our attention to any allegation or evidence showing that Indiana Grand

increased the risk of harm to him as a result of its alleged negligence or that he relied upon Indiana Grand's exercise of care with its safety measures. Accordingly, we conclude that the trial court properly entered summary judgment in favor of Indiana Grand on Cruz's negligence claim. *See id*.

## IV. *The Lauers*

Cruz made two negligence allegations against the Lauers in his Complaint, one of which he has abandoned on appeal, namely that they had breached their duty of care toward him by allowing a horse ridden by Martins to become unrestrained. Cruz's other allegation of negligence was that

> 13. [The Lauers] breached [their] duty by employing an exercise rider who was unlicensed and/or incapable of maintaining control of her horse.

(Appellant's App. Vol. II, p. 65). Cruz argues that partial summary judgment was precluded because the Lauers were not shielded from liability by the holding of *Pfenning* and genuine issues of material fact existed regarding "the Lauers' belief of Martins' horse riding abilities prior to allowing her to exercise the horse Accessorizing on May 7, 2018." (Appellant's Br. p. 20).

We agree with Cruz's contention that the Lauers are not protected by the rule announced in *Pfenning*. *See Pfenning*, 947 N.E.2d at 405 ("The blanket protection from liability embodied in the new formulation does not extend to persons or entities other than the athlete whose conduct allegedly caused a claimed injury."). However, we disagree with him that the Lauers were not

entitled to summary judgment. Cruz does not dispute that Martins is shielded from liability pursuant to *Pfenning* and *Megenity*. If Martins cannot be held liable, then there is no negligence to impute to the Lauers on a theory of respondeat superior. *See Bd. of Sch. Comm'rs of City of Indianapolis v. Pettigrew*, 851 N.E.2d 326, 332 (Ind. Ct. App. 2006) (observing that once a servant is released of liability, no negligence can be imputed to the principal for purposes of creating respondeat superior liability), *trans. denied.*

[26] Cruz has also failed to demonstrate that summary judgment was precluded on his negligent employment claim. Negligent retention and supervision is a distinct tort from respondeat superior. *Scott v. Retz*, 916 N.E.2d 252, 257 (Ind. Ct. App. 2009). Under a theory of negligent retention and supervision, liability may be imposed on an employer when an employee "steps beyond the recognized scope of his employment to commit a tortious injury upon a third party." *Clark v. Aris, Inc.,* 890 N.E.2d 760, 765 (Ind. Ct. App. 2008) (quotation omitted), *trans. denied.* The tort has the following relevant elements:

> A master is under a duty to exercise reasonable care so to control his servant *while acting outside the scope of his employment* as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if (a) the servant . . .is using a chattel of the master, and (b) the master (i) knows or has reason to know that he has the ability to control his servant, and (ii) knows or should know of the necessity and opportunity for exercising such control.

*Hayden v. Franciscan Alliance, Inc.*, 131 N.E.3d 685, 693 (Ind. Ct. App. 2019), *trans. denied*, (emphasis added). Cruz acknowledges in his appellate brief that Martins "was instructed to gallop Accessorizing." (Appellant's Br. p. 8). Cruz does not contend that there was any factual dispute that Martins galloped Accessorizing on May 7, 2018. Therefore, even if we were to assume that Martins was an employee of the Lauers, Cruz has failed to demonstrate that there was a factual dispute to be resolved that Martins was acting outside of the scope of her employment on May 7, 2018, and summary judgment was, therefore, merited for the Lauers.

[27] Cruz also argues that the Lauers can be held liable for injuries caused by Accessorizing because they either "knew the animal had dangerous propensities, or [] the animal in question is part of a class of animals that are known to have dangerous propensities." (Appellant's Reply Br. p. 6). However, Cruz did not raise this argument in the trial court or his Appellant's Brief, and it is waived. *See French v. State*, 778 N.E.2d 816, 825-26 (Ind. 2002) (holding that issues raised in a reply brief for the first time are waived). Therefore, we do not address it.

# CROSS-APPEAL

[28] The Lauers argue on cross-appeal that there were no genuine issues of material fact regarding their contention that Martins was an independent contractor, not an employee as alleged by Cruz, and that they were entitled to full summary judgment. Given our resolution of Cruz's claims on appeal, we reverse the trial court's partial denial of summary judgment in favor of Cruz on the issue of

Martins' employment status and enter summary judgment in favor of the Lauers on this issue.

# CONCLUSION

[29] Based on the foregoing, we conclude that no genuine issue of material fact precluded entry of summary judgment in favor of Indiana Grand and the Lauers on Cruz's negligence claims.

[30] Affirmed in part and reversed in part.

Mathias, J. and Tavitas, J. concur